Good morning, Your Honors. May it please the Court, my name is Bruce Wong and I am counsel for the petitioner for this case. I would like to reserve two minutes for rebuttal. Please watch the clock. The petitioner came in on a visitor visa to the United States and before his one-year time in the United States, he went to seek an attorney. The attorney was Phillip Stone and he retained Phillip Stone before the one-year deadline of coming to the United States to file an asylum claim. Unfortunately, his attorney, Phillip Stone, filed it past the one-year deadline and after he filed it, they had an asylum interview and the attorney had a conflict so he didn't appear for the asylum interview and he tried to continue the case. So the BIA says, well, all of that doesn't matter because the IJ considered his asylum application on the merits and rejected it based on the adverse credibility determination and not enough evidence once his testimony wasn't considered. That's true, the judge did consider the one-year bar. However, his subsequent attorney, Sihai Huang, he filed a motion to reopen based on ineffective and the board in that case found that part of the case was, there was ineffective. He complied with the Lozada requirements, but the board Let me just ask you about that. So my understanding was the Lozada requirements was just a preliminary step that the BIA wouldn't even consider whether there was ineffective assistance of counsel if the petitioner didn't file something with the state bar. But that doesn't mean that the BIA agrees that the performance of the counsel was deficient. It's just a threshold step. Is that wrong? No, but the problem with the first attorney, Mr. Stone, is he never even followed the requirements on the Lozada. I mean, it's broadly interpreted. It doesn't have to be followed strictly. And that was the case. So the subsequent attorney, Sihai Huang, filed the motion to reopen based on ineffective and the board found that he did finally comply with the Lozada requirements filing the complaint with the state bar. However, the board found that, well, they remanded part of it and they granted the, they rejected the other part. The part of voluntary departure was remanded down. However, with respect to the asylum, even though there was ineffective, the board didn't find prejudice and they listed the reasons why it didn't find prejudice. Do you agree or disagree with that finding? I disagree. I disagree. If you look at the totality of the circumstances, the attorney should have filed a motion to continue to get the medical document authenticated and they also should have, he had time to file the motion, to ask for a motion to continue. So the medical document that was submitted with the motion to reopen had a translation. But the BIA said, look, the IJ said it doesn't matter because even if I accepted this medical document and even if I accepted what you say, this Russian says, it doesn't matter because it contradicts the, what the American hospital said about a descended testicle or whatever. And so I don't give it any weight. It doesn't corroborate his story. I would disagree, Your Honor. I wouldn't say it contradicts. It's just not relevant to the, what he did here in the United States. I did, I know the medical says something, he had some predisposed problem with his. But we're just looking at whether the IJ's conclusion was supported by substantial evidence. So I don't think we can be fact finders and hear your, your argument now that it's not a contradiction. He's, the IJ says it doesn't corroborate Mr. Pirevdu's story. So it doesn't change my adverse credibility determination. Well, first you have to find prejudice first. I think the attorney's performance, Mr. Stone's performance prejudiced the initial proceedings because subsequently now when the motion reopened you have the, the medical that would be independent corroboration that would be consistent with his testimony of his injuries, of his medical diagnosis. So you disagree with the BIA's statement that, that the new medical evidence wasn't enough to show that he was eligible for relief to make a plausible claim because the IJ had already considered and rejected it. That's correct. I mean, there's other factors that he was prejudiced. I think the issue here is was he prejudiced because of his prior, Mr. Stone's representation. And if you look at all the factors, I believe he was. He didn't ask a continuance. He never asked for a forensic analysis for that newspaper article. And so in the motion to reopen, there wasn't any additional information about the newspaper article. The IJ had said, this looks sort of hokey to me. This is, you can hardly read it. It's so many different copies removed from the original. And it looks like this mention of Mr. Kharabdoo has just been sort of inserted in. But yet at the motion to reopen, there wasn't any further documentation, the original of the newspaper article or any forensic analysis. So it wasn't the BIA entitled to say you can't show prejudice because you can't show what a different attorney would have done better with respect to the newspaper article. Well, it would have affected the outcome. Even this medical letter, it at least corroborates his independent corroboration, Your Honor, for his testimony. I mean, the judge went into things like why he never got married, divorced, even though he was married. I don't think that was relevant in her finding of an adverse credibility finding, Your Honor. And so a better attorney would have done something different or what? I think a more, a competent attorney would have tried to continue the case. There's nothing in the transcript that asked him, that stated that he tried to continue the case. So at least he could have get the forensics. He could have properly translated the medical document. I believe a competent attorney would have done that, Your Honor. And how would that have made a difference? Because at the motion to reopen stage, all that was presented was the translated medical document. Because to show prejudice, you have to say the outcome would have been different. Or potential outcome. Right. But how would it have been different since at the motion to reopen, none of that, you had all the time, and all that was presented was the translated document, medical document. Well, it would at least show that he is consistent, his testimony. It would be corroboration, Your Honor. Do you want to retain the rest of your time for rebuttal? Yes, Your Honor. All right. We'll hear from the government. Good morning, Your Honors. May it please the court, Lisa S. Murcia of the Office of Immigration Litigation for the respondent. There are two issues before the court today. Whether the record evidence compels reversal of the agency's denial of asylum and withholding removal on the basis of purview was not credible. And secondly, whether the board abused its discretion denying Pervitieu's motion to reopen due to the ineffective assistance of counsel, where it concluded that Pervitieu did not make an adequate showing of prejudice to support his First, the record does not compel reversal of the immigration judge's findings agreed with by the board. The inconsistencies between Pervitieu's testimony and his asylum applications declaration, as well as inconsistencies within Pervitieu's testimony under the totality of the circumstances, support the agency's determination that Pervitieu was not credible. Some of these inconsistencies appear to be minor. I mean, in the sense that he couldn't remember whether it was one attacker or two attackers. He got some of the dates wrong. But if the substance of what he said was accurate about being attacked first in one town, then it came to the fact it was the original town, got attacked again, and the attack arose out of the fact that he was having a homosexual relationship with the son of a prominent politician in his hometown. I mean, tell me why these inconsistencies rise to the level of being significant. Well, Your Honor, this is sort of an issue of the forest and the trees in some ways. And as Your Honor pointed out, counsel, I mean, excuse me, the claim of the petitioner here is based on the fact he had an affair with the son of a prominent politician. And so each of his attacks here are sort of pre, I guess I would say, pre-anticipated by his contact with the petitioner's father. So in this case, looking at the timeline that he set out, he says, I was contacted by the father at this point and soon after an attack happened. I was contacted by my lover's father in 2004, or is it 2005? And then he says at some point the final attack, when he says that he's going to be coming to the United States, is precipitated by the fact that allegedly his father discovers that his son has HIV and he contacts Mr. Perpetu and says, I am angry, I'm going to kill you. And soon afterwards, he says, I am attacked. However, in all of these attacks, he's testifying inconsistently. He says, I was attacked in 2004. I was attacked in 2005. I was attacked by two men. No, I was attacked by three men. I recognized one. I recognized three. So all of it ties into his claim that he was being attacked because of his affair with this politician's son. So when he's testifying, when he is making these mistakes in time periods, when he says, for example, I was attacked in 2004 versus 2005, it becomes relevant when you look at the timeline of when he says, this was precipitated by the fact that I was in contact with Mr. Gonjadorge. My apologies, my pronunciation is probably a little off as well. So for example, one of the most damning points of inconsistencies in his testimony, he says in his declaration that in September 18, 2005, or around September 18, 2005, he's contacted by his lover from Italy. And he says, his lover tells them that I have HIV. And his declaration, he says, he soon after receives a phone call from Mr. Gonjadorge. And soon after that, he's confronted by three men and he's beaten and raped on November 27, 2004. In his testimony, however, that obviously is a significant event. However, in his testimony, he can't keep this straight at all. In his direct testimony, at first he testifies, I returned back to Ulaanbaatar in September 2004. He's asked specifically, did you receive a phone call? Did you have any contact with your lover's father at the time? Did you have any contact with Mr. Gonjadorge? He denies it. Then what he says on cross-examination, he's asked again, okay, you came back to Ulaanbaatar. And he said, so he says, so he's asked, are you sure if you spoke to Mr. Gonjadorge after you came back to Ulaanbaatar? And he actually asked counsel with Gonjadorge, and he denied it. And the counsel says, yes, that's who I mean. Who are you in contact with? And he says, no. I'm referring to the record on page 268, by the way, the record for docket number 11, the one that I used in my brief, the second one, I'm sorry. And so he says, no, I didn't. So he denies twice that he has contact with the father after he returns back to Ulaanbaatar. The event that he alleges in his declaration precipitates his confrontation with the two men in November 2005. And then he says, well, when do you recall last speaking to him? And he says July 2005. And then he's asked again, when did you last recall speaking to Mr. Gonjadorge? July 2004, the year before, right before he his lover went back to Italy. And so finally, when he's confronted with the declaration of, after he's denied it several times, and he's mixed up the date several times, he says, you know, they said, well, this is different from your declaration. I misunderstood the question. That's his only explanation for it. And he consistently does this about these very important dates and points in his claim. So all, so taken together, he says, well, he said, under the totality of the circumstances, these inconsistencies are trivial because they are central to his claim. So we're in post, this is a post Real ID Act claim, right? So we don't need to have inconsistencies that go to the heart of the asylum claim and the like. We said in Shrepa, I think if it's not a typo type inconsistency, then we have to give it weight. Is that correct? Yes. So that's changed the standard from our earlier immigration cases, as I understand it. Yes, Your Honor. However, going back to the question about whether or not these inconsistencies are trivial, you know, as Your Honor asked, I'm just, I'm simply stating that in this particular case, these inconsistencies cannot be seen as trivial. And under the totality of the circumstances, seeing these consistencies as part of, I guess I would say, the forest of the claim, they are not trivial. They are not simply inconsistencies that could be called trivial inconsistencies. Even though they are based on inconsistencies and dates, looking at the big picture, they all go to the fact that he is unable to testify consistently about his claim, that he had an affair with a young man and was essentially, his claim that his, the father, the father of the young man went after him in Mongolia. So for those reasons, the immigration judges finding that the inconsistencies between the testimony and the file of malfications, direct declaration, and within the testimony are supported by substantial evidence, and the record would not compel the reversal of the immigration judge's adverse credibility claim. And secondly, the board acted within its discretion, the second issue before the court today, is the board acted within its discretion by denying Pervidew's motion to be opened due to ineffective assistance of counsel, where Pervidew had a full and fair hearing before the immigration court and did not demonstrate that he was prejudiced by his counsel's errors. As Your Honor pointed out, in this particular case, Pervidew did not present any evidence to the board that anything that counsel, any of the alleged errors of counsel, would have changed the result in this case, that anything would have essentially changed the immigration judge's reign of the evidence in this court, and that it would essentially compel reversal of the adverse credibility finding of the immigration judge. For this reason, Pervidew received a full and fair hearing on his asylum withholding claims and was able to submit evidence and his testimony, and he did not show he was prejudiced by his former attorney's ineffective performance, and he did not show plausible grounds for relief. Thank you, Your Honors. For the foregoing reasons, the court should deny the petition. Thank you. Reb Edel? Make sure you comment, please, on the inconsistencies test and respond to what she had to say, please. In Bedari, inconsistencies in the dates that reveal nothing about the petitioner's credibility cannot form a basis of an adverse credibility finding. The heart of the claim here still is that. The heart of the claim, right? We're not looking at the heart of the claim anymore under the Real ID Act, right? So Shreffa says that an utterly trivial inconsistency, such as a typographical error, won't form a sufficient basis. But other than that, the Congress, in changing that law, has indicated that any inconsistencies can support an adverse credibility determination. That's true, Your Honor. After the Real ID Act, but totality of the circumstances, his testimony still was consistent with regards to his life threats, beatings, loss of job, and loss of party membership due to his sexual orientation and relationship. So, just to make it quick, I mean, the IJ said if the medical documents, it was never, it was just omitted for identification purposes. If it was translated properly, she said it might have made a difference in the case, as well as if the newspaper went through a forensics test, it might have made a difference in the case. And that would meet the standard of prejudice, showing that it would affect the outcome, or that he would have a viable claim, Your Honor. In inclusion, the case, the voluntary departure got remanded, and our position is that the asylum should also be remanded as well, Your Honor, because the petitioner suffered prejudice. Thank you. The case of Hrevdu v. Holder is submitted.
judges: Daniel, Noonan, Ikuta